Exhibit 12

# AIA® Document A101™ – 1997

## Standard Form of Agreement Between Owner and Contractor where the basis of payment is a STIPULATED SUM

AGREEMENT made as of the 4th day of September in the year of 2008
*(In words, indicate day, month and year)*

BETWEEN the Owner:
*(Name, address and other information)*

Iniciativa Tecnológica Centro-Oriental
Inteco
65 Betances Street
Caguas, Puerto Rico

and the Contractor:
*(Name, address and other information)*

Óptima, Contratista General, Inc.
PMB 705
89 Ave. de Diego, Suite 105
San Juan, PR 00927-6346

The Project is:
*(Name and location)*

Caguas Science and Technology Center
Gautier Benítez
Caguas, PR

The Architect is:
*(Name, address and other information)*

CSA Architects and Engineers, LLP
2 Ponce de León Ave.
Mercantil Plaza Building, Mezzanine Suite
San Juan, PR 00918

The Owner and Contractor agree as follows.

Project Description
The Work of this Contract includes demolition deemed necessary or required and all labor, transportation, materials, appliances, tools, personnel, equipment, and plant and the performance of all Work for the Construction of the Caguas Science and Technology Center at Gautier Benítez St. in Caguas, Puerto Rico in accordance with the Contract Documents for the Project.



---

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

This document has been approved and endorsed by The Associated General Contractors of America.

---

Init.
/

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 18:58:17 on 09/04/2008 under Order No.1000369379_1 which expires on 8/29/2009, and is not for resale.
User Notes:    (2352612604)

1

## ARTICLE 1  THE CONTRACT DOCUMENTS
The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement; these form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than Modifications, appears in Article 8.

## ARTICLE 2  THE WORK OF THIS CONTRACT
The Contractor shall fully execute the Work described in the Contract Documents, except to the extent specifically indicated in the Contract Documents to be the responsibility of others.

## ARTICLE 3  DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION
§ 3.1 The date of commencement of the Work shall be the date of this Agreement unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.
*(Insert the date of commencement if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)*

As specified in the Notice to Proceed.

If, prior to the commencement of the Work, the Owner requires time to file mortgages, mechanic's liens and other security interests, the Owner's time requirement shall be as follows:

§ 3.2 The Contract Time shall be measured from the date of commencement.
Fixture Date shall be September 15, 2009.
§ 3.3 The Contractor shall achieve Substantial Completion of the entire Work not later than 457 calendar days from the date of commencement, or as follows:
*(Insert number of calendar days. Alternatively, a calendar date may be used when coordinated with the date of commencement. Unless stated elsewhere in the Contract Documents, insert any requirements for earlier Substantial Completion of certain portions of the Work.)*

Fixture date 365 calendar days.

| Portion of Work | Substantial Completion Date |
|---|---|
| | |

, subject to adjustments of this Contract Time as provided in the Contract Documents.
*(Insert provisions, if any, for liquidated damages relating to failure to complete on time or for bonus payments for early completion of the Work.)*

$1,000 per calendar day delayed in a achieving Substantial Completion date (457 calendar days).

## ARTICLE 4  CONTRACT SUM
§ 4.1 The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum shall be Twelve Million Fifteen Thousand Dollars ($ 12,015,000 ), subject to additions and deductions as provided in the Contract Documents.

§ 4.2 The Contract Sum is based upon the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner:
*(State the numbers or other identification of accepted alternates. If decisions on other alternates are to be made by the Owner subsequent to the execution of this Agreement, attach a schedule of such other alternates showing the amount for each and the date when that amount expires)*

Init.
/

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:53:17 on 09/04/2008 under Order No.1000369379_1 which expires on 8/29/2009, and is not for resale.
User Notes: (2352612604)

2

Contract Sum excludes the $300,000 allowance for the solarpanels system and the Builder's risk which will be provided
by the Owner.

§ 4.3 Unit prices, if any, are as follows:

| Description | Units | Price ($ 0.00) | |
|---|---|---|---|
| Cleaning and Conditioning existing exterior brick wall | Square Feet | | $ 2.00 |

ARTICLE 5 PAYMENTS
§ 5.1 PROGRESS PAYMENTS
§ 5.1.1 Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

§ 5.1.2 The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

§ 5.1.3 Provided that an Application for Payment is received by the Architect not later than the 30th day of a month, the Owner shall make payment to the Contractor not later than the 30th day of the following month. If an Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than thirty ( 30 ) days after the Architect receives the Application for Payment.

§ 5.1.4 Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire Contract Sum among the various portions of the Work. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

§ 5.1.5 Applications for Payment shall indicate the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment.

§ 5.1.6 Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

.1 Take that portion of the Contract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Work by the share of the Contract Sum allocated to that portion of the Work in the schedule of values, less retainage of ten percent (10%). Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Section 7.3.8 of AIA Document A201-1997;

.2 Add that portion of the Contract Sum properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction (or, if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing), less retainage of ten percent ( 10% );

.3 Subtract the aggregate of previous payments made by the Owner; and

.4 Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Section 9.5 of AIA Document A201-1997.

§ 5.1.7 The progress payment amount determined in accordance with Section 5.1.6 shall be further modified under the following circumstances:

Init.
/

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:53:17 on 09/04/2008 under Order No.1000369379_1 which expires on 8/29/2009, and is not for resale.
User Notes: (2352612604)

3

.1    Add, upon Substantial Completion of the Work, a sum sufficient to increase the total payments to the full amount of the Contract Sum, less such amounts as the Architect shall determine for incomplete Work, retainage applicable to such work and unsettled claims; and
*(Section 9.8.5 of AIA Document A201-1997 requires release of applicable retainage upon Substantial Completion of Work with consent of surety, if any.)*

.2    Add, if final completion of the Work is thereafter materially delayed through no fault of the Contractor, any additional amounts payable in accordance with Section 9.10.3 of AIA Document A201-1997.

§ 5.1.8 Reduction or limitation of retainage, if any, shall be as follows:
*(If it is intended, prior to Substantial Completion of the entire Work, to reduce or limit the retainage resulting from the percentages inserted in Sections 5.1.6.1 and 5.1.6.2 above, and this is not explained elsewhere in the Contract Documents, insert here provisions for such reduction or limitation.)*

After fifty percent (50%) of the adjusted work has been completed, the Owner will pay in full the subsequent partial estimates, provided the progress and quality of work is satisfactory.

§ 5.1.9 Except with the Owner's prior approval, the Contractor shall not make advance payments to suppliers for materials or equipment which have not been delivered and stored at the site.

§ 5.2 FINAL PAYMENT
§ 5.2.1 Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when:

.1    the Contractor has fully performed the Contract except for the Contractor's responsibility to correct Work as provided in Section 12.2.2 of AIA Document A201-1997, and to satisfy other requirements, if any, which extend beyond final payment; and

.2    a final Certificate for Payment has been issued by the Architect.

§ 5.2.2 The Owner's final payment to the Contractor shall be made no later than 30 days after the issuance of the Architect's final Certificate for Payment, or as follows:

ARTICLE 6   TERMINATION OR SUSPENSION
§ 6.1 The Contract may be terminated by the Owner or the Contractor as provided in Article 14 of AIA Document A201-1997.

§ 6.2 The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201-1997.

ARTICLE 7   MISCELLANEOUS PROVISIONS
§ 7.1 Where reference is made in this Agreement to a provision of AIA Document A201-1997 or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Contractor's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

*(Paragraphs deleted)*
§ 7.3 The Owner's representative is:
*(Name, address and other information)*

Oscar Jiménez

Init. / 

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:53:17 on 09/04/2008 under Order No.1000368379_1 which expires on 8/29/2009, and is not for resale.
User Notes:    (2352612604)

4

Executive Director
INTECO
65 Betances Street
Caguas, PR  00725

**§ 7.4** The Contractor's representative is:
*(Name, address and other information)*

Ramón L Torres Burgos
PMB 705
89 Ave. de Diego, Suite 105
San Juan, PR  00927-6346

**§ 7.5** Neither the Owner's nor the Contractor's representative shall be changed without ten days written notice to the other party.

**§ 7.6** Other provisions:

Designated Inspector is:
José D. Rivera Martínez, P.E.
65 Betances Street
Caguas, PR  00725

## ARTICLE 8  ENUMERATION OF CONTRACT DOCUMENTS
**§ 8.1** The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated as follows:

**§ 8.1.1** The Agreement is this executed 1997 edition of the Standard Form of Agreement Between Owner and Contractor, AIA Document A101-1997.

**§ 8.1.2** The General Conditions are the 1997 edition of the General Conditions of the Contract for Construction, AIA Document A201-1997.

**§ 8.1.3** The Supplementary and other Conditions of the Contract are those contained in the Project Manual dated December 21, 2007 as amended by Adenda, and are as follows

| Document | Title | Pages |
|---|---|---|
| AIA A 201-1997 | General Conditions | 52 |
| | Supplementary General Conditions | 10 |
| | Special Conditions | 11 |

**§ 8.1.4** The Specifications are those contained in the Project Manual dated as in Section 8.1.3, and are as follows:
*(Either list the Specifications here or refer to an exhibit attached to this Agreement.)*
Title of Specifications exhibit:      Exhibit "A"
*(Table deleted)*
**§ 8.1.5** The Drawings are as follows, and are dated      unless a different date is shown below:
*(Either list the Drawings here or refer to an exhibit attached to this Agreement.)*
Title of Drawings exhibit:      Exhibit "B"
*(Table deleted)*
**§ 8.1.6** The Addenda, if any, are as follows:

| Number | Date | Pages |
|---|---|---|
| A | July 9, 2008 | 8 |
| B | July 11, 2008 | 1 |

Portions of Addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 8.

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:53:17 on 09/04/2008 under Order No.1000368379_1 which expires on 8/29/2009, and is not for resale.
User Notes:                              (2352612604)

§ 8.1.7 Other documents, if any, forming part of the Contract Documents are as follows:
*(Paragraph deleted)*
a) During the terms of this contract, contractors agreed to maintain in effect the following bonds and/or insurance that should form part of this contract: (1) payment and performance bond of 100% of the contract price (2) workmen's compensation insurance (póliza del FSE) (3) comprehensive general and liability insurance of $1 million dollars per occurrence with a general aggregate of $2 million dollars (4) Commercial liability insurance of a combined single limit bodily injury and property damage of $1 million dollars per each occurrence with an umbrella liability of $3 million dollars.

The parties agreed that all insurances and or bonds here required should be maintained for a minimum period of one year after date of substantial completion for final payment, whichever is earlier.

The insurance policies required in this Contract are to contain, or be endorsed to contain, the following provisions:

1. INTECO, Inc., its officers, employees, and agents are to be covered as additional insured as respects liability arising out of activities performed by or on behalf of the Contractor in connection with this Contract.
2. The Contractor agrees to Hold Harmless and indemnify INTECO, Inc. against any and all claims, suits, damages, costs, or legal expense as a result of bodily injury or property damage resulting from the negligence of the Contractor or Subcontractor. All policies of insurance carried by the Contractor shall be written as primary policies, not contributing with and not in excess of insurance coverage which INTECO may carry.
3. To the extent the Contractor's negligence, the Contractor's insurance coverage shall be the primary insurance as respects to INTECO, its officers, employees, and agents. Any insurance maintained by INTECO shall not contribute with the insurance of the Contr4actor who is the Named Insured or benefit the Contractor as the Name Insured in any way.
4. The Contractor's insurance shall apply separately to each insured against whom the claim is made and/or lawsuit is brought, except with respect to the limits of the insurer's liability.
5. Coverage shall not be suspended, voided, cancelled, reduced in coverage or in limits, except for the reduction of the aggregate by paid claims until after 30 days prior written notice, return receipt requested, has been given to INTECO.
6. The Contractor shall furnish INTECHO certificates of insurance of all the above policies, and INTECO reserves the right to require complete, certified copies of all required insurance policies at any time.
7. The Contractor shall include all subcontractors as insiders under its policies, and/or shall furnish separate certificates of insurance and policy endorsements for each subcontractor as evidence of compliance with the insurance requirements of the Contract.
8. The contractor shall include the following clause in the policy: "INTECO does not waive its right to subrogate against (1) contractor, any of its subcontractors, subcontractors, agents or employees, or (2) the Architect, Architect's consultant, separate contractors, if any, or any of their subcontractors, sub-subcontractors, agents or employees, for damages caused to non-Project related party property, real or personal, or both, at or adjacent to the site of the Project, caused by the negligent, intentional or other willful act of omission of the (1) contractor or any of its subcontractors, agents or employees, or (2) the Architect, Architect's consultants, agents or employees.

b) At the time of signing this Agreement, the Contractor should submit the following certification and/or documents that will be considered as part of this Contract.

1. Certificación de radicación de planillas del Departamento de Hacienda de contribución sobre ingresos durante los últimos tres (3) años.
2. Certificación del Departamento de Hacienda sobre ausencia de deuda contributiva o existencia de plan de pago.
3. Certificación de ASUME sobre ausencia de deuda.
4. Certificación del CRIM sobre ausencia de deudas sobre propiedad mueble o inmueble y/o existencia de plan de pago.
5. Certificación del Departamento del Trabajo sobre obtención de seguro por desempleo.



Init.

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:53:17 on 09/04/2008 under Order No.1000369379_1 which expires on 8/29/2009, and is not for resale.
User Notes: (2352612604)

Certificación del Departamento del Trabajo sobre obtención de incapacidad temporera o choferil.
7. Certificado de Incorporación del Departamento de Estado referente a ÓPTIMA.
8. Certificado del Departamento de Estado sobre "goodstanding" de la corporación ÓPTIMA.
9. Resolución Corporativa notarizada autorizando representación y firma del contrato por parte del Sr. Ramón Torres en su carácter de Presidente.

ARTICLE 9 GENERAL PROVISIONS

The parties agreed that when referral as to the Architect, if applicable, could refer as to the "Owner's Representative", according to Article 7.3.

Contractor's Bid Conditions (Exhibit "C")
Bid Questions and Answers – 79 (Exhibit "D")
Letter to Oscar Jimenez Dated August 27, 2008 (Exhibit E)

This Agreement entered into as of the day and year first written above.

INTECO                                              ÓPTIMA, Contratista General, Inc.

_____                    _____
OWNER - Oscar Jiménez, P.E.                         CONTRACTOR - Ramón L. Torres Burgos
(Signature)                                         (Signature)

Init.
/

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:53:17 on 09/04/2008 under Order No.1000368378_1 which expires on 8/29/2009, and is not for resale.
User Notes:                                                                                      (2352612604)

8